RICHARD P. TESCHE AND MARTHA A. TESCHE, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 72275. Filed October 23, 1959.

---

*Harry H. Ellis, Esq.*, for the petitioners.

*H. Tracy Huston, Esq.*, and *Edward E. Pigg, Esq.*, for the respondent.

FORRESTER, *Judge:* Respondent has determined deficiencies in the Federal income tax of the petitioners and additions thereto as follows:

| Year | Income tax | Additions to tax | | |
|---|---|---|---|---|
| | | Sec. 6651, I.R.C. 1954 | Sec. 294(d) (1)(A),I.R.C. 1939 | Sec. 294(d) (2), I.R.C. 1939 |
| 1954 | $174.60 | $8.73 | $42.37 | $27.48 |
| 1955 | 138.68 | | | |
| 1956 | 254.33 | | | |
| | 567.61 | 8.73 | 42.37 | 27.48 |

The issues for determination are: (1) Whether the petitioners realized ordinary income or capital gain during the taxable years involved from the sale of certain shrubs and scion wood trees held more than 6 months; (2) whether the petitioners are liable for the additions to tax for the taxable year 1954 under section 6651 of the Internal Revenue Code of 1954 and sections 294(d)(1)(A) and 294(d)(2) of the Internal Revenue Code of 1939.

### FINDINGS OF FACT.

Some of the facts have been stipulated and are so found.

Richard P. Tesche, hereinafter referred to as the petitioner, and Martha A. Tesche, husband and wife, reside at Overland Park, Kansas, and they filed their joint Federal income tax returns for the calendar years 1954, 1955, and 1956 with the district director of internal revenue at Wichita, Kansas. Their return for the taxable year 1954 was filed on May 12, 1955.

In 1940, petitioner purchased a 5-acre tract of land near Overland Park, Kansas, for the purpose of establishing a tree nursery. He started to build up the nursery stock on this land in 1943, and, after he felt it had become adequately stocked and equipped, he commenced full-time operation of the tree nursery on January 1, 1954.

Petitioner grows about 30 different varieties of juniper trees on his land, and during the winter months he cuts limbs, known as scion wood, from these trees, hereinafter referred to as scion wood trees. The cut scion wood is then brought into a greenhouse and grafted to potted rootstock. It takes approximately 5 weeks for a

graft to unite, and about 10 per cent of the grafted plants die during the process. The rootstock petitioner uses is usually a 2-year-old seedling, about 10 to 15 inches tall, and with approximately the same thickness as a lead pencil.

Petitioner's scion wood trees have to be at least 3 or 4 years old before their limbs are suitable for grafting and, after 6 to 10 years old, these trees become unproductive because they are planted close together and eventually reach a dormant stage.

During the taxable years in question, petitioner's inventory, per his books, included only his rootstock and was as follows:

| Year | Inventory Jan. 1 | Purchases | Inventory Dec. 31 |
|---|---|---|---|
| 1954 | $344.55 | $1,014.25 | $1,014.25 |
| 1955 | 1,014.25 | 733.87 | 733.87 |
| 1956 | 733.87 | 1,952.28 | 1,952.28 |

All of this rootstock was purchased from other nurseries. During the years in issue petitioner purchased up to 40,000 such seedlings annually, which he then grafted and sold. Also during these years petitioner did not dispose of his scion wood trees while they still produced suitable scion wood. When no longer productive, they were culled and either destroyed or sold to gardeners. Petitioner did not advertise these trees for sale. They were sold in small lots throughout each year to gardeners who inquired about their availability.

The only advertisement used by petitioner was a list of the grafts that he had available and printed upon his nursery stationery. Scion wood trees were not mentioned. Under contracts that were executed up to 6 months prior to the date of delivery, petitioner sold his grafted stock exclusively to regular nurseries, which hold grafted stock until it becomes salable as finished landscape stock. Petitioner had no signs advertising or identifying his nursery.

Schedules attached to, and made a part of, petitioner's Federal income tax returns for his taxable years 1954, 1955, and 1956 contained, in summary, the following calculations of petitioner's ordinary business income from his tree nursery: [1]

### 1954

| | |
|---|---|
| Total income from grafts | $3,658.45 |
| [Cost of sales] | 344.55 |
| Gross profit from grafting operations | $3,313.90 |
| [Operating expenses] | 1,822.68 |
| Total net income from grafting operations | $1,491.30 |

[1] Due to mechanical errors, petitioner overstated his operating expense for the years 1954 and 1955 by $1.08 and $1.30, respectively. The form and terms of these schedules correspond to petitioner's Federal income tax returns.

### 1955

| | |
|---|---|
| Total receipts grafts and shrubs_____ | $9, 639. 62 |
| Cost of sales_____ | 1, 014. 25 |
| | |
| Gross profit_____ | $8, 625. 37 |
| Operating expenses_____ | 2, 404. 54 |
| | |
| Net profit on grafts and shrubs_____ | $6, 220. 83 |

### 1956

| | |
|---|---|
| Sales—grafts and cuttings_____ | $12, 144. 25 |
| Sales—shrubs _____ | 896. 00 |
| | |
| Total sales_____ | $13, 040. 25 |
| Cost of sales_____ | 733. 87 |
| | |
| Gross profit from operations_____ | $12, 306. 38 |
| Less expenses_____ | 3, 197. 77 |
| | |
| Net profit_____ | $9, 108. 61 |

The petitioner did not include in the above calculations of ordinary income the gains realized on the sale of certain shrubs in 1954 or the gains from sales of scion wood trees in each of the 3 years. Said gains were reported as long-term capital gains, and are computed as follows:

| Year | Kind of property | Gross sales price | Cost or other basis, etc. | Gain on sales |
|---|---|---|---|---|
| 1954_____ | 583 shrubs_____ | $570. 50 | $116. 60 | $453. 90 |
| 1954_____ | 780 trees_____ | 2, 293. 65 | 390. 00 | 1, 903. 65 |
| 1955_____ | 538 trees_____ | 1, 669. 85 | 269. 00 | 1, 400. 85 |
| 1956_____ | 786 trees_____ | 2, 379. 50 | 393. 00 | 1, 986. 50 |

On his income tax returns for the years in issue petitioner described his business as follows:

1954 "Wholesale Nursery   Making and selling grafts"
1955 "Wholesale Nursery   Nursery"
1956 "Wholesale Propagating Nursery   Grafts"

The scion wood trees sold during the taxable years involved were held over 6 months and constituted property used in petitioner's trade or business within the meaning of section 1231 of the Internal Revenue Code of 1954. These trees were not held by petitioner primarily for sale to customers in the ordinary course of his trade or business.

In 1954, petitioner and his wife, without reasonable cause, failed to file a declaration of estimated tax and substantially underestimated their tax.

The principal issue presented herein is whether the gain from the sale of certain shrubs and scion wood trees is entitled to capital gains treatment. Respondent contends that these items were held primarily for sale to customers in the ordinary course of petitioner's trade or business, and thus, the gain from their sale is to be treated as ordinary income.

1. There has been complete failure of proof on the part of petitioner as to the shrubs sold in 1954, consequently we sustain respondent's position that gains from such sales were ordinary income.

2. Turning now to the scion wood trees. In discussing whether or not property was used in a trade or business or held primarily for sale to customers in the ordinary course of business, we stated in *Greene-Haldeman*, 31 T.C. 1286, 1292–1293 (1959) :

> Many criteria have been employed in resolving this factual question, *inter alia:* The intent of the seller, the purpose or purposes for which the property was acquired, held, and sold; the frequency, continuity, and substantiality of the sales; whether the sales are in furtherance of an occupation of the taxpayer; the proximity of sale to purchase; and the extent of sales activity on part of the seller. See *S.E.C. Corporation* v. *United States, supra; Rollingwood Corp.* v. *Commissioner*, 190 F. 2d 263 (C.A. 9, 1951) ; *Mauldin* v. *Commissioner*, 195 F. 2d 714 (C.A. 10, 1952). All of these criteria should be considered; no single factor can be viewed as dispositive. *S.E.C. Corporation* v. *United States, supra.*

Based upon our consideration of the above criteria, we have found as a fact that petitioner's scion wood trees constitute property held by petitioner for use in his trade or business within the meaning of section 1231, I.R.C. 1954.[2]

The primary and nontemporary function of petitioner's scion wood trees was to produce the limbs he needed for grafting. Some of said

---

[2] Section 1231 of the Internal Revenue Code of 1954 is, in substance, the same as section 117(j) of the Internal Revenue Code of 1939 with respect to the issue presented in this case, and is as follows:

SEC. 1231. PROPERTY USED IN THE TRADE OR BUSINESS AND INVOLUNTARY CONVERSIONS.

(a) GENERAL RULE.—If, during the taxable year, the recognized gains on sales or exchanges of property used in the trade or business, * * * exceed the recognized losses from such sales, exchanges, and conversions, such gains and losses shall be considered as gains and losses from sales or exchanges of capital assets held for more than 6 months. * * *

(b) DEFINITION OF PROPERTY USED IN THE TRADE OR BUSINESS.—For purposes of this section—

(1) GENERAL RULE.—The term "property used in the trade or business" means property used in the trade or business, of a character which is subject to the allowance for depreciation provided in section 167, held for more than 6 months, and real property used in the trade or business, held for more than 6 months, which is not—

(A) property of a kind which would properly be includible in the inventory of the taxpayer if on hand at the close of the taxable year,

(B) property held by the taxpayer primarily for sale to customers in the ordinary course of his trade of business, or

trees were sold after they became unproductive; petitioner was not in the practice of selling scion wood trees that were still useful to him. Petitioner did not advertise that he had such trees for sale, and prospective purchasers could only choose from those trees which were no longer useful in the production of scion wood. Petitioner did not grow scion wood trees with the dual and primary objectives of obtaining scion wood from them for a given period and then selling them. Compare *L. D. Hancock*, 31 T.C. 752 (1959), with *Greene-Haldeman*, *supra*.

The mere fact that it could be predicted that petitioner would sell some of his scion wood trees each year does not in and of itself indicate that such trees were held primarily for sale. *James M. McDonald*, 23 T.C. 1091, 1099 (1955). Petitioner's sale of culled scion wood trees in small lots throughout each year supports his testimony that sales were made at irregular intervals to those who inquired.

Petitioner sold about 35,000 grafts per year as against an average of about 700 scion wood trees. His business, started in 1954, was growing rapidly and in 1956 gross receipts from scion wood tree sales amounted to only 16 per cent of gross sales. The average for the 3 years in issue was 23 per cent but it was decreasing progressively and petitioner testified it was only 8 per cent in 1958.

Consideration of all of the above factors leads us to hold for petitioner on this issue.

3. Petitioner and his wife have failed to introduce any evidence with respect to respondent's determination of additions to tax under section 6651 of the Internal Revenue Code of 1954 and sections 294(d)(1)(A) and 294(d)(2) of the Internal Revenue Code of 1939. Therefore, additions to tax under these sections are sustained for failure of proof.

*Decision will be entered under Rule 50.*